IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **KEVIN DIAZ,** | ) | CASE NO. 1:15 CV 1000 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) | Magistrate Judge Vecchiarelli |
| | ) | |
| Defendant. | ) | **MEMORANDUM OPINION** |

This matter is before the Court on the Report and Recommendation of Magistrate Judge Nancy A. Vecchiarelli. (Docket #17.) The Magistrate Judge recommends that the Commissioner of Social Security's final determination denying Plaintiff, Kevin Diaz's claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.,* be reversed and the case remanded.

As set forth by the Magistrate Judge, the procedural history of this case is as follows:

**I. PROCEDURAL HISTORY**

On May 17, 2012, Plaintiff filed his applications for POD, DIB, and SSI, alleging a disability onset date of January 29, 2012. (Transcript ("Tr.") 11.) The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Id.) On October 16, 2013, an ALJ held Plaintiff's hearing. (Id.) Plaintiff participated in the hearing, was represented by counsel, and testified. (Id.) A vocational expert ("VE") also

participated and testified. (Id.) On November 15, 2013, the ALJ found Plaintiff not disabled. (Tr. 22.) On March 17, 2015, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.) On May 19, 2015, Plaintiff filed his complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 14, 15, 16.)

Plaintiff asserts the following assignment of error: the ALJ's residual functional capacity (RFC) finding failed to accommodate Plaintiff's visual and mental limitations.

## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Plaintiff was born in March 1968 and was 42-years-old on the alleged disability onset date. (Tr. 21.) He had a marginal education and was able to communicate in English. (Id.) He had past relevant work as a machine feeder, degreaser acid dripper, grinder/degreaser, packager, and furniture deliverer. (Tr. 20.)

### B.  Medical Evidence

#### 1.  Medical Reports

On December 16, 2011, Plaintiff treated with primary care physician Anita Singh, M.D. (Tr. 369.) He complained of difficulty seeing at night. (Id.) Dr. Singh diagnosed diabetes mellitus and hypertension and prescribed medication. (Tr. 371.)  On January 12, 2012, William Roscoe, O.D., performed an eye examination. (Tr. 365.) Plaintiff's vision was 20/30 to 20/40 with glasses on. (Id.) Dr. Roscoe recommended that Plaintiff consult with neuro-opthamology for an evaluation. (Id.)  Plaintiff treated with Dr. Singh in February 2012 and complained of a migraine headache with sensitivity to bright light. (Tr. 362.) Dr. Singh prescribed medication. (Tr. 363.)

On February 28, 2012, Plaintiff underwent a diabetic eye examination with Karolinne Rocha, M.D. (Tr. 356.) Plaintiff reported decreased temporal vision, flashing lights, and difficulty driving at night. (Id.) Plaintiff's bilateral corrected visual acuity was approximately 20/50 to 20/40. (Tr. 357.)

William Cappert, M.D., examined Plaintiff on February 29, 2012, and noted a mild nuclear sclerosis cataracts in both eyes. (Tr. 358.) Dr. Cappert opined that Plaintiff's decreased vision was not explained by his eye examination and the doctor questioned whether it was related to migraine headaches. (Id.) That

same day, Plaintiff treated with neurologist Hari Kunhi Veedu, M.D. (Tr. 348.) Plaintiff reported having a headache three to four times per week over the past year. (Tr. 349.) The headaches involved a throbbing pain and mild blurry vision. (Id.) Plaintiff described visual hallucinations of seeing shadows once a week for the last four to five months. (Id.) Dr. Veedu diagnosed poorly controlled diabetes, migraine-type headaches without papilledema, and mild diabetic neuropathy. (Tr. 351.) Dr. Veedu recommended additional testing and prescribed Depakote for headaches. (Tr. 352.)

Plaintiff treated with Dr. Singh on March 16, 2012, and he reported that Depakote had provided moderate relief of his headaches. (Tr. 344.) On March 20, 2012, Plaintiff complained to Dr. Veedu of headaches and a tingling sensation in his fingers. (Tr. 338-39.) Plaintiff was less irritable but claimed that he still had severe pain. (Tr. 339.) Dr. Veedu increased Plaintiff's prescriptions of Depakote and Gabapentin. (Tr. 341.)

On April 25, 2012, Plaintiff returned to Dr. Veedu and reported no improvement in his headaches or neuropathic pain. (Tr. 329.) Dr. Veedu adjusted Plaintiff's medications. (Tr. 330.) In May 2012, Plaintiff continued to report no change in his headaches. (Tr. 323.) In June 2012, Plaintiff again reported neuropathic pain and indicated that he was unable to work. (Tr. 313-14.) Dr. Veedu prescribed medication and referred Plaintiff to pain management. (Tr. 316.)

In September 2012, Plaintiff treated with pain management specialist Andrew Messiah, M.D. (Tr. 469.) Plaintiff reported on-going pain in his lower legs and forearms for two years. (Id.) He also told Dr. Messiah that he experienced visual blurring. (Id.) Dr. Messiah assessed severe diabetic neuropathy of the bilateral upper and lower extremities. (Tr. 472.) The doctor directed Plaintiff to stop smoking and drinking alcohol and to control his diabetes and weight. (Id.)

### 2.    **Agency Reports**

On July 4, 2012, William Bolz, M.D., conducted a review of the record. (Tr. 104-05.) Dr. Bolz opined that Plaintiff would be limited to occasional climbing of ladders, ropes, and scaffolds and to frequent balancing. (Tr. 104.) Dr. Bolz opined that Plaintiff's near and far acuity were "limited" in both eyes. (Tr. 104-05.) Plaintiff's depth perception, accommodation, color vision, and field of vision were unimpaired. (Tr. 105.)  Dr. Bolz explained that due to Plaintiff's 20/50 visual acuity, Plaintiff was precluded only from driving at night. (Id.) The doctor also noted that Plaintiff reported he could see well with his glasses during the day and completed his activities of daily living, including driving. (Id.)

-3-

On December 22, 2012, Charles Misja, Ph.D., performed a psychological evaluation of Plaintiff. (Tr. 480.) Plaintiff reported that he experienced depression and feelings of worthlessness. (Tr. 481.) Plaintiff lived alone, but his girlfriend frequently visited and cared for him. (Id.) Plaintiff had been fired for entering into a verbal altercation with his boss. (Tr. 482.) He described other verbal altercations and indicated that he preferred to work alone. (Id.) Plaintiff had little social interaction and liked to remain home by himself, although he enjoyed helping friends. (Id.) Dr. Misja noted that Plaintiff was entirely unrepentant of his quick temper and verbal aggressiveness in the workplace, even though he had lost a few good jobs as a result. (Tr. 484-85.) Dr. Misja opined that Plaintiff would be able to understand and implement ordinary verbal instructions and would have minimal problems in maintaining attention, concentration, persistence, and pace to perform simple and multi-step tasks. (Tr. 485.) Plaintiff was likely to have severe problems in responding appropriately to supervision and to coworkers. (Id.) Dr. Misja opined that Plaintiff would have moderate to severe problems with his ability to respond appropriately to work pressures in a workplace setting. (Tr. 486-86.)

In January 2013, psychologist Jennifer Swain, Psy.D., reviewed the record. (Tr. 128-30.) She opined that Plaintiff would be able to perform simple, one- and two-step tasks that did not require reading written instructions. (Tr. 128.) Because Plaintiff's focus on physical pain would cause some problems in maintaining concentration, Dr. Swain opined that Plaintiff could perform static tasks without strict demands on production or pace. (Tr. 129.) He could work in a setting where social distractions and demands were minimal. (Id.) Plaintiff could not participate in ongoing work with the general public, but could engage in brief, occasional, and superficial interactions with others. (Id.) Plaintiff could sustain work in solitary and relatively static setting where changes were easily explained and some time was provided to make any needed adjustments. (Id.)

On January 14, 2013, Paul Morton, M.D., conducted a review of the record and opined as to Plaintiff's physical limitations. (Tr. 126-27.) Dr. Morton opined that Plaintiff was limited to medium exertional work with frequent balancing and occasional climbing of ladders, ropes, and scaffolds. (Tr. 126.) The doctor found that Plaintiff's near and far acuity were "limited" in both eyes. (Tr. 127.) Dr. Morton opined that Plaintiff was restricted from night driving due to problems with lights and early cataracts. (Id.)

**C.     Hearing Testimony**

    **1.     Plaintiff's Hearing Testimony**

Plaintiff testified that he stopped looking for work due to his neuropathy. (Tr. 56.) He experienced vibrations accompanied by a sharp, tingling feeling

-4-

throughout his body at all times. (Tr. 56-58.) Plaintiff could not work because he had difficulty feeling and picking up objects. (Tr. 67.) If he attempted to hold objects, like a coffee cup or gallon of milk, he would drop them. (Id.) Plaintiff could stand or walk for no longer than fifteen minutes. (Tr. 68.) Plaintiff went to the store in the early hours in order to avoid being around people. (Id.) Plaintiff grew panicked and frustrated around other people. (Id.) Plaintiff believed his medication did not help to alleviate his mental health issues. (Tr. 71.)

### 2. Vocational Expert's Hearing Testimony

Thomas Nimberger, a vocational expert, testified at Plaintiff's hearing. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work experience. (Tr. 86-87.) The individual could perform light work and occasionally climb ladders, ropes, and scaffolds. (Id.) The individual could frequently balance. (Id.) The individual was limited to unskilled work; could maintain concentration, persistence, and pace for unskilled work; and could interact with the general public occasionally. (Id.) The individual was limited to jobs that involved only routine-type changes. (Id.) The VE testified that Plaintiff could perform such jobs as a mail clerk, bench assembler, and packager. (Tr. 87.)

The ALJ asked the VE to assume a hypothetical individual with the same restrictions as above, as well as a limitation on the use of hands for occasional fingering. (Tr. 88.) Plaintiff's counsel added to this hypothetical question the additional limitations of no fast-paced work and no production rate quotas. (Tr. 93-94.) The VE testified that Plaintiff could perform such jobs as counter clerk, gate guard, and bakery worker. (Tr. 89, 94.)

Counsel asked the VE what degree of social interaction the gate guard job involved. (Tr. 91.) The VE indicated that the position required no more than occasional interaction with the public. (Id.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is

disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520© and 416.920©. A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560©, and 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since January 26, 2011, the alleged onset date.

3. The claimant has the following severe impairments: loss of visual acuity, peripheral neuropathy, mood disorder, and personality disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with the following additional limitations: occasional climbing of ladders, ropes, or scaffolds, frequent balancing, can maintain concentration, persistence, and pace for unskilled work,

|   |   |
|---|---|
|   | is limited to occasional interaction with the general public, there are no limitations on interacting with coworkers and supervisors, and is limited to routine type changes in workplace settings. |
| 6. | The claimant is unable to perform any past relevant work. |
| 7. | The claimant was born on March 27, 1968, and was 42-years-old, which is defined as a younger individual age 18-49 on the alleged disability onset date. |
| 8. | The claimant has a marginal education and is able to communicate in English. |
| 9. | Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. |
| 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. |
| 11. | The claimant has not been under a disability, as defined in the Social Security Act, from January 26, 2011, through the date of this decision. |

(Tr. 11-22.)

Report and Recommendation at pp. 1-10.  (Footnotes omitted.)

Plaintiff filed his Complaint with this Court on June 13, 2012, challenging the final decision of the Commissioner.  (Docket #1.)  In his Brief on the Merits, Plaintiff argues that the ALJ's RFC finding is insufficient to accommodate his visual and mental limitations or to substantiate a finding that he is not disabled.   (Docket #14.)  In response, the Commissioner argues that the ALJ's finding that Plaintiff could perform a limited range of light work is supported by substantial evidence; that the ALJ accounted for all of Plaintiff's medically determinable impairments; and, that remand for the reasons argued by Plaintiff would not change the ALJ's determination in this case.  (Docket #15.)

-7-

On January 26, 2016, the Magistrate Judge issued her Report and Recommendation. (Docket #17.)  The Magistrate Judge recommends that the decision of the Commissioner be reversed and remanded.  The Magistrate Judge found that the ALJ erred by not providing an explanation as to why she did not include limitations on social interaction, pace and production noted by the state agency psychologist, Dr. Swain.  The Magistrate Judge instructed that "because the ALJ's calculation of Plaintiff's RFC was less restrictive than Dr. Swain's limitations, and therefore contradicted the psychologist's opinions, SSR 96-8p required the ALJ to explain her decision not to include the limitations in Plaintiff's RFC."  Further, the Magistrate Judge stated that although the record contains no evidence to support Plaintiff's claims that "daily blurred vision" is a limitation, the ALJ should clarify her decision as it relates to the visual findings of Drs. Bolz and Morton because remand is otherwise necessary to address the social interaction, pace and production limitations.

On February 5, 2016, the Commissioner filed Objections to the Report and Recommendation.  (Docket #18.)  The Commissioner argues that the Record shows no reversible error and, therefore, that remand is unnecessary and the ALJ's decision should be affirmed.  With regard to social limitations, the Commissioner argues that the ALJ asked the VE directly regarding limitations on production and pace and that the VE testified that any such limitations would not significantly impact the available jobs identified.  Further, the Commissioner argues that
while the VE did not address whether restrictions of Plaintiff's ability to interact with coworkers and supervisors would impact the available jobs, he did testify that in the gate guard job, 99-100% of the time, it did not require speaking to anyone and that the definition of bakery worker set forth

-8-

in the Dictionary of Occupational Titles provides that a bakery worker's social interaction is limited. With regard to visual limitations, the Commissioner argues that Plaintiff has failed to satisfy his burden of proving disability because there is no evidence of record to demonstrate Plaintiff's limited acuity affects his ability to work and no evidence that Plaintiff's visual impairment resulted in daily blurred vision.

On February 16, 2016, Plaintiff filed his Response to the Defendant's Objections to the Magistrate Judge's Report and [Recommendation]. (Docket #19.) Plaintiff notes his agreement with the Magistrate Judge's findings, arguing that the ALJ did not fulfill her duty to weigh the medical opinions of record and that the Magistrate Judge correctly applied applicable law.

**Standard of Review for a Magistrate Judge's Report and Recommendation**

The applicable district court standard of review for a magistrate judge's report and recommendation depends upon whether objections were made to the report. When objections are made to a report and recommendation of a magistrate judge, the district court reviews the case *de novo*. FED. R. CIV. P. 72(b) provides:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

The standard of review for a magistrate judge's report and recommendation is distinct from the standard of review for the Commissioner of Social Security's decision regarding benefits. Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C.

§405(g). The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. Ohio 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. Ohio 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, supra, citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. Ky. 2009) (citations omitted).

The Commissioner's conclusion must be affirmed "'absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.'" *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. Tenn. 2005) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. Mich. 2004)). Courts are not required to "'convert judicial review of agency action into a ping-pong game'" where "'remand would be an idle and useless formality.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. Mich. 2009) (quoting *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. Ohio 2001); *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6

(1969)).

### Discussion

This Court has reviewed the Magistrate Judge's Report and Recommendation *de novo* and has thoroughly considered the entire Record in this case, including all of the pleadings, transcripts, and filings of the parties, as well as the Objections to the Report and Recommendation filed by the Commissioner and Plaintiff's response thereto. The Court has reviewed, in detail, the decision of the ALJ. The Court hereby declines to adopt the Report and Recommendation of the Magistrate Judge. Remand would not result in a different outcome in this case and is, therefore, unwarranted.

First, with regard to pace and production limitations, the VE testified in response to a direct question posed by the ALJ that the available unskilled work identified for Plaintiff would not be significantly impacted by pace and production limitations. (Record at pp. 93-94.) Therefore, the ALJ's finding that Plaintiff can maintain concentration, persistence and pace for unskilled work is supported by substantial evidence and additional testimony or analysis would have no impact on the decision denying benefits.

Second, although the hypothetical posed to the VE and the ALJ's finding that Plaintiff was not limited in interacting with coworkers and supervisors fail to address Dr. Swain's finding of moderate limitations in Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors or get along with coworkers or peers, the ALJ did indeed consider all evidence of record in analyzing Plaintiff's social functioning. The ALJ provides analysis of Dr. Swain's conclusions with reference to the findings of Dr. Misja, who examined Plaintiff at the

request of Disability Determination Services. The ALJ noted that she gave little weight to the conclusions of Dr. Misja, as they were not supported by objective signs and findings and found, with respect to Plaintiff's social functioning, that "the weight of the objective and subjective evidence of record documents some limitations in social function; however they are not more than moderate." (Record at p. 15.) Further, the VE identified available jobs including gate guard and bakery worker, neither of which involve significant interaction with anyone. Accordingly, additional testimony or analysis is unnecessary as it would not impact the Commissioner's decision denying benefits.

Third, there is no medical evidence of record to substantiate Plaintiff's claims of daily blurred vision or the assertion that his visual impairment impacted his ability to work. The ALJ noted that a January 2012 examination found Plaintiff's best visual acuity was 20/30-20/40 and, in February 2012, 20/50-20/40, and the ALJ considered that Plaintiff had been diagnosed with flashing light/temporal visual field defect. (Record at pp. 13, 18, 357 and 365.) The ALJ also considered the medical opinions of William Bolz, M.D., and Paul Morton, M.D., who evaluated Plaintiff's physical condition based on the evidence of record. Both Dr. Bolz and Dr. Morton found Plaintiff's near and far acuity to be limited in both eyes and found that Plaintiff was precluded from driving at night. (Record at pp. 19, 104-05; 127.) Dr. Bolz noted that Plaintiff reported that he could see well with his glasses during the day and was capable of completing his activities of daily living including driving. (Id.) Plaintiff did not mention visual impairment affecting his ability to perform work during the hearing before the ALJ and there is no medical evidence of record that Plaintiff's sight impairment, which restricts night driving, has any impact on his ability to work in any of the jobs identified by the VE. (Docket #15 at p. 11.) Thus, the

omission of visual limitations from the RFC or hypothetical posed to the VE was harmless error and remand for further proceedings is unwarranted.

## Conclusion

For the foregoing reasons, the Court hereby declines to adopt the Report and Recommendation of the Magistrate Judge.  The decision of the Commissioner denying Plaintiff, Kevin Diaz's claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* is supported by substantial evidence and is hereby AFFIRMED.

This case is hereby TERMINATED.

IT IS SO ORDERED.

                                                s/Donald C. Nugent
                                                DONALD C. NUGENT
                                                United States District Judge

DATED: April 7, 2016